IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
MAR 21 2011
U.S. BANKRUPTCY COURT
BY_____ DEPUTY

IN RE: § Case No. 07-53287 rbk
§
LISA ANN GALAZ §
§ (Chapter 13)
Debtor. §
§ Adversary Number: 11-5015 K

## DENISE VERNON'S OPPOSITION TO DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION AND TO APPOINT RECEIVER OVER WORLDWIDE SUBSIDY GROUP, LLC; MOTION FOR SANCTIONS

**TO THE HONORABLE RONALD B. KING, UNITED STATES BANKRUPTCY JUDGE:**

NOW COMES, Denise Vernon, Plaintiff herein and makes and files this, her Opposition to the "Debtor's Motion to Appoint Receiver Over Worldwide Subsidy Group, LLC" filed by Lisa Galaz, and in support thereof would show unto the Court the following:

### INTRODUCTION

Debtor Lisa Galaz brings a motion on a complaint that, in and of itself, is in violation of two separate agreements with Denise Vernon - - (i) the March 1, 2005 Agreement of Transitional Assignment, and (ii) the May 2008 Mediation Agreement. It is premised on a series of allegations that are easily disproved by the communications between the parties.

Only $150,000 is owed to creditors by Lisa Galaz. In her complaint, Lisa Galaz states "WSG has a substantial amount of cash available to distribute to its owners." However, rather than seek a distribution from WSG as she has in the past, one that would

1

be sufficient to get her out of bankruptcy, Lisa Galaz brings an adversary proceeding before this court to scuttle a viable, lucrative business. More than two years ago, this court had before it sufficient funds to pay off all of Lisa Galaz's creditors 100% *and* leave $35,000 cash for Lisa Galaz *and* leave Lisa Galaz continuing interest in WSG, but elected not to do so. The exact same scenario exists here, and it is evident that Lisa Galaz is simply forum shopping, intentionally keeping all matters involving her before this particular court.

This court needs to first determine IF Lisa Galaz should be allowed to proceed with this lawsuit, and IF her legal counsel should be engaged for such matter. It is not based on a legal entitlement, but a whim to cash out her interest in WSG, and force her co-member to do the same. As it stands, Lisa Galaz's legal counsel in her bankruptcy has already received ten times more than the creditors, and if this lawsuit progresses, the lawsuit will be before this court for a long, long time.

This proposed adversary proceeding, violates two separate written agreements between Lisa Galaz and Denise Vernon. The requested relief would bring Worldwide Subsidy Group LLC ("WSG") into breach of *several hundred agreements*. Clearly, Lisa Galaz is using this adversary proceeding as leverage to extract Lisa Galaz as a member with better exit terms.

This court has the authority to order an involuntary receivership over *Lisa Galaz's specific interest in* WSG, that is where its authority should end.

A. **Debtor has previously agreed to withdraw any motion for receivership, and the present motion is in violation of the Mediation Agreement.**

On April 17, 2008, under adversary proceeding # 08-05043-rbk, Debtor brought a motion for receivership over WSG [docket item no. 18]. On May 2, 2008, Debtor entered into a mediated settlement agreement (the "Mediation Agreement") to fully resolve the then pending motion for a receiver.

The Mediation Agreement was confirmed by this court, and entered into the record. [Exh. A; Docket item no. 75] One aspect of the Mediation Agreement was that Lisa Galaz would withdraw her pending receivership motion, and withdraw any attempt to seek a receiver for WSG. Exh. A at ¶ 9. As such, a new motion for receivership cannot even be entertained without violating the Mediation Agreement (which has occurred by this very motion).

If Debtor now contends that the Mediation Agreement did not dispose of Debtor's ability to seek a receiver, a position challenged by the two other parties to the Mediation Agreement, a good faith dispute exists regarding the interpretation of the Mediation Agreement. Under such circumstances, resolution as to the interpretation of the Mediation Agreement vests exclusively with Judge Specia. Exh. A at ¶ 19. At minimum, therefore, if the Bankruptcy Court honors the terms of the Mediation Agreement then it must first allow the parties to submit to Judge Specia the issue of whether the Mediation Agreement precluded Debtor from filing any further motions for receivership.

Notwithstanding, submission to Judge Specia is not necessary, as any contention that Debtor did not waive her right to seek a receiver for WSG is in such bad faith, that arbitration would simply unnecessarily deplete WSG's resources.

### B. The Mediation Agreement created a mechanism for resolving disputes between the co-members of WSG, and Debtor has previously embraced such mechanism.

Even if this court had authority to order an involuntary receivership upon WSG, and Lisa Galaz had not already agreed to withdraw any attempts to seek an involuntary receiver, there STILL are not ample bases to order a receivership. **The Mediation Agreement provided a mechanism for resolving disputes between the two members, i.e., the Business Manager.** By contractual arrangement, there cannot be an impasse between the members because there is already a negotiated means by which the members' disagreements are resolved. Debtor has fully taken advantage of this mechanism, and enlisted the authority of the Business Manager in order to resolve disputes,[1] and no evidence exists or suggests that the Business Manager has acted in bad faith. For Lisa Galaz, or even this court, to disregard such aspect of the Mediation Agreement would effectively invalidate/breach the entirety of the Mediation Agreement.

### C. The Debtor has not cited a single management issue that warrants imposition of the draconian remedy of involuntary receivership, and has therefore failed to satisfy the requirements of Texas law. Evidence reflecting Denise Vernon's efforts to operate in good faith, and Lisa Galaz's bad faith efforts, are so plentiful that they can only be produced at hearing.

WSG is organized and existing under the laws of Texas, and therefore governed by Texas law. Texas law dictates the narrow circumstances under which involuntary

---

[1] In fact, at one point the Debtor even instructed the Business Manager to draft an Operating Agreement for WSG that memorialized this method of dispute resolution.

4

receivership may be imposed. The aggregate of Debtor's substantive allegations regarding why receivership is needed is:

> "There is substantial ill will and continuous disagreement between Lisa Galaz on the one hand and Denise Vernon and Raul Galaz on the other hand over the affairs of WSG. The strained relationship between and among Lisa Galaz, Raul Galaz, and Denise Vernon has caused a stalemate and deadlock to occur with regard to the operation, management, and control of WSG. That deadlock frustrates the purpose and ability of WSG to continue to operate, and exposes Lisa Galaz to significant actual or potential liabilities."

Complaint and Motion at ¶16.

Even ignoring the arguments set forth in sections B. and C., above, all of which independently preclude this Bankruptcy Court from placing WSG into receivership, the Debtor has not cited a single issue that warrants imposition of the draconian remedy of involuntary receivership. The only "issues" known to exist between the parties do not relate to the management of WSG, but to interpretation of the Mediation Agreement.[2] In fact, a polling of Brian Boydston, Denise Vernon and Raul Galaz reveals that none of them is aware of any disputes or issues relating to the management of WSG and, predictably, this is why none are identified by the Debtor.[3]

Section 11.401 et seq. of the Texas Business Organizations Code governs the winding up and termination of a domestic entity and, specifically, involuntary

---

[2] As this court is aware, such issues were presented to the Bankruptcy Court in the context of Denise Vernon's "Motion to Compel Compliance with Mediation Agreement and Arbitration . . .", which was granted in part and denied in part by Order of June 29, 2010 [Docket no. 352.]. To the extent the motion was denied, it is currently subject to appeal to the Federal District Court.

[3] Each of these individuals intends to testify at the hearing on this matter that they are unaware of any issue relating to the management of WSG.

5

receivership. Initially, involuntary receivership must be brought by a separate action, and subject matter jurisdiction vests with the district court in the county in which the business is located. TX Bus. Org. Code, Section 11.402. A receiver may *only* be appointed if:

> (1) it is shown that the property or fund is in danger of being lost, removed, or materially injured;
>
> (2) circumstances exist that are considered by the court to necessitate the appointment of a receiver to conserve the property or fund and avoid damage to interested parties;
>
> (3) all other requirements of law are complied with; *and*
>
> (4) the court determines that other available legal and equitable remedies are inadequate.

TX Bus. Org. Code, Section 11.403(b).

As noted above, *none* of these requirements have been met, much less all of them. There has been no submission establishing that WSG is in danger of being "materially injured", a mechanism already exists for resolving disputes relating to the management of WSG (though none are known to exist), and imposition of a receiver would violate the terms of the Mediation Agreement that has already been relied on by the Debtor and entered as an order by this Bankruptcy Court. Consequently, Debtor's motion fails on all counts.

In fact, the evidence reflecting Denise Vernon's efforts to operate in WSG in good faith, and Lisa Galaz's corresponding failure to act in good faith, is so vast and plentiful that Denise Vernon must present such evidence at the hearing on this matter, and must provide testimony describing the context of such evidence.

### D. Debtor seeks to renege on her obligations under the Mediation Agreement.

As noted, the Mediation Agreement establishes the existence and authority of WSG's Business Manager. Exh. A at ¶¶ 13-15. The Mediation Agreement additionally establishes the basis for Raul Galaz's employment with WSG, and incorporates his attached employment agreement.[4] Exh. A at ¶¶ 1, 11, 12, 22.

Notwithstanding, Debtor's motion seeks to have the Bankruptcy Court disregard these provisions, effectively reneging on Debtor's obligations. Specifically, Debtor seeks to have a receiver overtake the negotiated responsibility of the Business Manager (motion at 4.1-4.2), decide whether to even have a Business Manager (motion at 4.9), and decide whether to engage the services of Raul Galaz (motion at 4.10).

Simply put, it is not within the authority of the Bankruptcy Court to ignore the terms of the Mediation Agreement, which agreement was previously accepted by Lisa Galaz and adopted by this court.[5]

### E. Debtor has already reneged on her obligations under the Agreement of Transitional Assignment.

Under the terms of the Agreement of Transitional Assignment, Lisa Galaz and Denise Vernon were mutually precluded from siding with Marian Oshita regarding any

---

[4] Raul Galaz is the sole employee of WSG, and has been the sole employee since 2004.

[5] This Bankruptcy Court had the power to approve the Mediation Agreement. 11 U.S.C Section 105(a); Fed.Rules.Bank.Proc., Rule 9019(a). However, Bankruptcy Courts do not have the authority to create substantive rights otherwise unavailable under applicable law, nor does 11 U.S.C Section 105(a) constitute a roving commission to do equity. _United States v. Sutton_, 786 F.2d 1305, 1207, 1308 (5th Cir. 1986); _First Southwest Corp. v. Texas Consumer Finance_, (In re _Texas Consumer Fin Corp.)_, 480 F.2d 1261, 1265 (5th Cir. 1973).

issue of WSG ownership.[6] See Exh. B, at ¶ 1(c). Such contractual provision was in the context of a hard-fought litigation to obtain control of WSG, which had been "hijacked" by Marian Oshita. According to their agreement:

> "Lisa [Galaz] shall not vote any part or portion of the ownership interests in [WSG] assigned and transferred hereunder to her with Marian Oshita against Denise [Vernon] on any matter relating to the ownership of [WSG]."

Despite this comprehensive prohibition, Lisa Galaz has already reneged on her agreement, and her complaint in this proposed adversary proceeding seeks to do the same.

Specifically, in May 2007 it was agreed by Lisa Galaz and Denise Vernon that Marian Oshita's interest in WSG should be deemed forfeited, based on a Marian Oshita's refusal to turn over the books and records of WSG, even in the face of an order of a California court. Moreover, a figure of approximately $800,000 was unaccounted for from the WSG accounts that were able to be located. In sum, the extraordinary harm that had been thrust upon WSG by Ms. Oshita warranted forfeiture of Ms. Oshita's 25% interest. A letter detailing this conclusion was drafted jointly by Lisa Galaz, Denise Vernon, and WSG counsel, and forwarded to Ms. Oshita's legal counsel, who immediately acknowledged receipt.

Notwithstanding, at some point during her bankruptcy, Lisa Galaz began asserting that she was not a 50% owner of WSG, but a 37.5% owner, asserting that Marian Oshita

---

[6] As a point of clarification, the demand for such provision was made by Lisa Galaz, not Denise Vernon. Denise Vernon agreed to such provision only if Lisa Galaz agreed to be similarly bound by it.

remained a 25% owner. Not only was such a reverse of position a breach of the Agreement of Transitional Assignment, it failed to comport with Lisa Galaz's other actions. For instance, at no time has Lisa Galaz ever contended that Marian Oshita should be accorded 25% of the annual WSG profits. In fact, Lisa Galaz has regularly received 50% of the WSG annual profits, has declared them on her tax returns, and received them in distributions. Why she would assert that Marian Oshita remains a 25% owner yet take every action to the contrary, is simply perplexing.

The explanation for this contradictory behavior became evident in early 2010. In the course of her litigation with Segundo Suenos, it was revealed in produced documents that Lisa Galaz had requested an individual named Julian Jackson to act as her proxy to "acquire" Marian Oshita's interest in WSG.[7] Of course, in order for such acquisition to have any consequence, Lisa Galaz would have to acknowledge the validity of Ms. Oshita's interest - - a breach of the Agreement of Transitional Assignment.

Upon the discovery of this backroom deal with Julian Jackson, Lisa Galaz was confronted with the produced documents in the Segundo Suenos trial, and asserted that "it was only a proposal", that "the deal was not consummated", and acknowledged that it would be in breach of the Agreement of Transitional Assignment.

Nonetheless, and inexplicably, Lisa Galaz continues to assert the reverse of the position that she maintained prior to her bankruptcy - - that Marian Oshita is a 25%

---

[7] The mechanics for such "acquisition" were misinformed, at best. It involved Lisa Galaz transferring for "$1.00" her $18,750 judgment against Ms. Oshita to Julian Jackson, then him foreclosing on Ms. Oshita's interest in WSG. Lisa Galaz, however, failed to realize that per the Agreement of Transitional Assignment, the judgment against Ms. Oshita was jointly held by both herself and Denise Vernon. Lisa Galaz appears to have further misunderstood the mechanism of judicial foreclosure, which would not have guaranteed foreclosure of Ms. Oshita's WSG interest for the sum of the $18,750 judgment against Ms. Oshita.

owner of WSG - - all the while maintaining that Lisa Galaz is entitled 50% of the WSG profits. Clearly, if Lisa Galaz continues to maintain such position, and any negative consequence befalls Denise Vernon as a result of Lisa Galaz's actions, Denise Vernon will have no alternative other than to counterclaim against Lisa Galaz for breach of the Agreement of Transitional Assignment, and seek application of all damages (e.g., liability to Marian Oshita) exclusively against Lisa Galaz.

### F. Dissolution will bring WSG into breach of *several hundred agreements*.

WSG's primary function as a company is to prosecute royalty claims and account to the parties from whom it has acquired rights. WSG has entered into more than *three hundred* such agreements, which require WSG to collect a particular type of royalty from all available resources. WSG's agreements are with such notable producers as:

    DreamWorks SKG

    British Broadcasting Corporation (BBC)

    Worldwide Pants (David Letterman)

    Martha Stewart Living Omnimedia, Inc.

    A&E Television Network

    Lifetime Television

WSG's contracts assign control of various royalty collection rights arising during the course of the agreement to WSG. Consequently, for several hundred parties, WSG has been assigned and controls any rights that these parties may have had for almost a ten-year period, arising no later than 2002 until the present. A further fact of WSG's industry is that prosecution of the rights that WSG has been assigned may not occur for several years. In fact, only one month ago WSG was instructed on the commencement of

proceedings for the distribution of U.S.-based cable retransmission royalties applicable to the years 2000-2003, even though years 1997-1999 cable have not been commenced and proceedings for the distribution of 1997-present satellite retransmission royalties has never been commenced. WSG is making claim to a percentage of annual pool of U.S. cable and satellite retransmission royalties. Consequently, WSG remains responsible for the prosecution of rights applicable to an aggregate pool.

WSG is now knee-deep in the 2000-2003 U.S. cable royalty distribution proceedings, and each announced "proceeding" will last approximately a year and a half, excluding any appeals. WSG cannot simply hand back the rights it has acquired. Doing so would leave each and every one of the several hundred parties to now fend for themselves, and educate themselves of the expertise that WSG has developed over a decade. Such efforts would be impossible, and simply abandoning all its clients at this time would bring WSG into breach with *several hundred contracting parties*.

### G. Debtor's motion is brought in bad faith, and sanctions are appropriate.

Debtor is aware of her obligations under the Agreement of Transitional Assignment and the Mediation Agreement. She is aware that she previously agreed to withdraw her motion for a receiver, agreed that a Business Manager would resolve her WSG-related disputes with Denise Vernon and agreed on the scope of the Business Manager's authority. All of these obligations are well-documented. That Debtor seeks to have this Bankruptcy Court sanction her intended breach, and the proposed breach of several hundred WSG contracts.

H.  **The requested sale of Denise Vernon's interest is inappropriate under ¶ 11 U.S.C. 363(h).**

1) The partition of Lisa Galaz's interest is practical.

2) The sale of Lisa Galaz's divided interest could yield/realize an amount equal to her percentage interest of the whole.

3) The detriment to Denise Vernon does outweigh the interest to be received by Lisa Galaz.

## PRAYER

For the foregoing reasons, Plaintiff Denise Vernon prays that Debtor Lisa Galaz's motion be denied, and that reasonable attorney's fees be awarded to Denise Vernon.

Respectfully submitted,

_____
RICHARD P. CORRIGAN
Attorney at Law
1920 Nacogdoches Road, Ste. 100
San Antonio, Texas 78209
Telephone (210) 824-9505
Facsimile (210) 824-3009
State Bar No. 04840700

ATTORNEY FOR PLAINTIFF
DENISE VERNON

## CERTIFICATE OF SERVICE

I hereby certify that on this 21ST day of March, 2011, a true and correct copy of the above and foregoing has been served by electronic means through CM/ECF system; certified mail, return receipt requested, postage prepaid; United States First Class mail, postage prepaid; overnight delivery; facsimile transmission; and/or hand delivery, on the parties listed below:

H. Anthony Hervol
4414 Centerview Drive, Ste. 200
San Antonio, TX 78228

Mary K. Viegelahn
Chapter 13 Trustee
909 N.E. Loop 410, Ste. 400
San Antonio, TX 78209

Office of the U.S. Trustee
P.O. Box 1539
San Antonio, TX 78295

Benjamin R. Bingham
Bingham & Lea, P.C.
319 Maverick St.
San Antonio, TX 78212

_____
RICHARD P. CORRIGAN